IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OSCAR MELIAN, | : | |
| | : | No. 1:12-cv-00439 |
| Plaintiffs, | : | |
| | : | Hon. John E. Jones III |
| v. | : | |
| | : | |
| EUROPA MACCHINA, INC., | : | |
| DENNIS J. FRICK, and LORI FRICK, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM & ORDER**

**August 6, 2012**

Presently pending before the Court is the Plaintiff's Motion to Dismiss (doc. 27) Defendants' counterclaim for unjust enrichment. The Motion has been fully briefed (docs. 27-1, 29, 30) and is thus ripe for our review. For the reasons that follow, we will deny the Motion in its entirety.

## I.   PROCEDURAL HISTORY

Plaintiff Oscar Melian ("Plaintiff") commenced the above-captioned action on March 8, 2012 with the filing of a Complaint (doc. 1). Plaintiff seeks damages against the Defendants, Europa Macchina, Inc. ("Europa"), Dennis J. Frick, and Lori Frick, (collectively, "Defendants"), for intentional misrepresentation (Count I), violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count II), breach of contract (Count III), and breach of the covenant of good

faith and fair dealing (Count IV). The Plaintiff's Complaint also alleges that the he is entitled to an award of punitive damages (*Id*. ¶¶ 127-131).

Defendants filed a Motion to Dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on April 12, 2012, (doc. 10), seeking dismissal of the individual Defendants, Dennis and Lori Frick, and dismissal of Plaintiff's claim for punitive damages. This Court denied the said motion by Order (doc. 24) dated June 14, 2012. The Defendants thereafter filed an Answer and a two-count Counterclaim (doc. 25), asserting claims for breach of contract (Count I) and unjust enrichment (Count II) against the Plaintiff.

On July 12, 2012, the Plaintiff filed the instant Motion to Dismiss (doc. 27) seeking dismissal of the Defendants' unjust enrichment claim. The Motion has been fully briefed (docs. 27-1, 29, 30) and is thus ripe for our review.

**II.   STANDARD OF REVIEW**

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to

Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate

that defendant's liability is more than a "sheer possibility." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later expounded upon and formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a Rule 12(b)(6) motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III.  SUMMARY OF THE FACTS

In accordance with the standard of review applicable to a Motion to Dismiss, the following facts are derived from the Defendants' Counterclaim (doc. 25) and viewed in a light most favorable to the Defendants.

The Plaintiff and the Defendants entered into an agreement for the sale of a 1958 Porsche 356A Sunroof Coupe ("subject vehicle") and a separate agreement for the restoration thereof. (Doc. 1, ¶¶ 18-20; Doc. 25, ¶¶ 18-20). Plaintiff paid $49,500 toward the vehicle plus $6,000 to begin funding the subject vehicle's restoration. (Doc. 25, ¶ 21). The Defendants agreed to provide Plaintiff with title to the vehicle and a Certificate of Authenticity regarding the subject vehicle. (Doc. 1, ¶ 27; Doc. 25, ¶ 27). The Defendants restore many vehicles annually and, pursuant to standard operating procedure, hold the title and Certificate of Authenticity for the vehicle undergoing restoration until the restoration is complete and the customer requests the same for purposes of titling and insuring the vehicle. (Doc. 25, ¶ 27). Both before and during the restoration process, the Defendants advised the Plaintiff that restoration of these types of vehicles could easily approach $200,000 to $300,000. (*Id.* ¶ 32).

Defendants began restoration of the vehicle on November 23, 2009. (*Id.* ¶ 42). Defendants advised the Plaintiff that the engine was performance ready, but

not show ready, and thus in order to restore the vehicle to show quality as requested by the Plaintiff, portions of the engine would need to be rebuilt. (*Id.* ¶ 43). Defendants informed Plaintiff of the engine issues as they arose, and sought and were granted authority and permission to perform corrective restoration on the individual parts. (*Id.* ¶ 47). Plaintiff acquiesced to each and every restoration task and repair performed on the subject vehicle. (*Id.* ¶ 49). Defendants informed the Plaintiff that it was acceptable for Plaintiff to fall behind on invoice payments. (*Id.*).

Plaintiff was continually made aware of the costs of restoration both verbally and through email correspondence with the Defendants. (*Id.* ¶ 69). As of December 31, 2010, Plaintiff had paid to the Defendants a total of $105,000 for the subject vehicle and the restoration work and owed the Defendants an outstanding sum of $64,963.00. (Doc. 1, ¶ 72; Doc. 25, ¶ 72). On September 2, 2011, Plaintiff emailed the Defendants to complain about the size of the bill, although the Plaintiff had never informed the Defendants of any monetary limits for the restoration. (Doc. 25, ¶ 74). Plaintiff advised the Defendants that he was considering selling the vehicle, and the Defendants cautioned Plaintiff against that course in order to keep Plaintiff from incurring a substantial financial loss. (Doc. 1, ¶ 76; Doc. 25, ¶ 80).

The Defendants declined the Plaintiff's request for a fixed-price restoration, advising the Plaintiff that such arrangements are untrustworthy, likely resulting in rushed and inadequate restoration or exorbitant charges to ensure the restorer is not operating at a loss. (Doc. 25, ¶ 82; Doc. 1-19). The parties were thus unable to come to an agreement on a fixed price for which the Defendants would complete restoration of the subject vehicle. (Doc. 25, ¶ 82). In light of Plaintiff's financial hardships, on September 4, 2011, the Defendants offered to store the vehicle at no charge for sixty days, accompanied by an offer of sixty days interest free financing on the outstanding invoice balance, while the Plaintiff contemplated whether to sell the vehicle or store it indefinitely in hopes that his financial situation would improve. (Doc. 1-19).[1] This action followed on March 8, 2012.

**IV.   DISCUSSION**

To state a proper claim for unjust enrichment, a plaintiff must show "that the party against whom recovery is sought either wrongfully secured or passively received a benefit that would be unconscionable for the party to retain without compensating the provider." *Hershey Foods Corp. v. Ralph Creek, Inc.*, 828 F.2d 989, 999 (3d Cir. 1987). Put another way, a plaintiff must prove the following

---

[1] While we refer collectively to the "Defendants" throughout the above statement of facts, we note that the Defendants maintain that Defendant Lori Frick had no involvement regarding any of the above transactions or communications.

elements: "benefits conferred on one party by another, appreciation of such benefits by the recipient, and acceptance and retention of these benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Allegheny Gen. Hosp. v. Phillip Morris*, 228 F.3d 429, 447 (3d Cir. 2000). Plaintiff contends that "Defendants have physical possession of the subject vehicle" and "hold the legal title to the vehicle," he cannot "take, move, display, or enjoy any other benefit as one might find in a vehicle." (Doc. 27-1). Plaintiff's argument misses the mark.

The parties do not dispute that the Plaintiff has paid the Defendants the entire price of the vehicle, $49,500, and that Plaintiff thus owns the vehicle. All the same, Plaintiff asserts that because the Defendants still "possess and control" the subject vehicle, he has not been able to appreciate any benefits associated with ownership of the subject vehicle. The Defendants admit in their Answer and Counterclaim that they still possess the subject vehicle; however, they explain that this is because standard practice in the restoration industry is to retain possession and title of the vehicle throughout the restoration process and until the same are requested by the owner for insurance and titling purposes. (Doc. 25, ¶ 27). The mere fact that the Defendants are presently in possession of the vehicle does not gainsay the Defendants' contention that the Plaintiff has nonetheless received and

appreciated a benefit.

The Defendants plead the following facts: the Plaintiff is the owner of the subject vehicle and paid to the Defendants $49,500 for the same; the Defendants engaged in a substantial and lengthy restoration process regarding the subject vehicle, ordering parts and supplying labor at the Plaintiff's request, and with the Plaintiff's express authorization and permission; and the Defendants have not been fully compensated for their restoration services, with an outstanding balance due of $64,963.00. As a result of the Defendants' as-yet-uncompensated service, the Plaintiff's vehicle is much closer to being "show ready"–a benefit requested by the Plaintiff–than it was prior to the Defendants' service. These facts therefore belie the Plaintiff's argument that he has not yet appreciated a benefit–he has the benefit of a partially-restored vehicle.

The pertinent inquiry here is whether the Defendants provided, and the Plaintiff received, a benefit, under circumstances where it would be unjust for the Plaintiff to retain said benefit without compensating the Defendant. *See Hershey Foods Corp.*, 828 F.2d at 999. While the benefit received admittedly may only be a portion of the benefit expected in that the subject vehicle is not yet, and apparently may never be, entirely restored, the Defendants have nonetheless pled sufficient facts which, if true, prove that the Plaintiff obtained a benefit from the

Defendants in the form of a partially-restored vehicle. Under these circumstances, it would be inequitable for the Plaintiff to retain that benefit without payment for the same, and accordingly, we will deny the Plaintiff's Motion to Dismiss.

## V.     CONCLUSION

For the reasons fully articulated herein, the Court concludes that the Defendants have pled sufficient facts to state a claim for unjust enrichment. Accordingly, the Plaintiff's Motion to Dismiss (doc. 27) will be denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT**:

1. The Plaintiff's Motion to Dismiss (doc. 27) is **DENIED**.

/s John E. Jones III
John E. Jones III
United States District Judge